UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DARLA DHILLON** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 11-3064 |
| | * | |
| **OAK ALLEY FOUNDATION, L.L.C., ET AL.** | * | SECTION "L" (3) |

ORDER AND REASONS

The Court has received Defendants Oak Alley Foundation and Catlin Specialty Insurance Company's motion for summary judgment. (Rec. Doc. 21). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

I.   BACKGROUND

This cases arises out of personal injuries to Plaintiff Darla Dhillon, a California resident. Plaintiff alleges that on April 17, 2011, she visited Oak Alley Plantation, a national historic landmark located in Vacherie, Louisiana. Oak Alley Plantation is operated by Defendant Oak Alley Foundation ("Oak Alley"), a Louisiana organization with 501(c)(3) nonprofit status, and has a liability insurance policy with Defendant Catlin Specialty Insurance Company ("Catlin"), a Delaware corporation. The grounds of Oak Alley Plantation contain a mansion and a 300-year-old alley of oak trees.

Plaintiff claims to have been injured while walking from the mansion's entrance to the front of the house to view the alley of oak trees. She alleges that she walked straight out toward the trees through an opening between the pillars of the veranda, and that "there was a difference in height between the veranda and the surrounding ground, which was not discernible." (First Amend. Compl., Rec. Doc. 10 at ¶ 8). Plaintiff claims that as a result of this difference in height,

she lost her balance and broke both ankles. *Id.* at ¶¶ 8-9. She brings claims against Defendants for negligence and strict liability in failing to maintain the property in a safe condition and failing to warn Plaintiff of the allegedly dangerous condition that caused her injuries.

## II.     PRESENT MOTIONS

Defendants Oak Alley and Catlin now move for summary judgment. (Rec. Doc. 21). They argue that Oak Alley is entitled to immunity under the Louisiana Recreational Use Immunity Statutes, and as a result, liability exists only if Oak Alley acted willfully or maliciously in failing to warn Plaintiff of the difference in height between the veranda and the ground. Plaintiff opposes Defendants' motion and argues that Oak Alley is not entitled to immunity, and even if it were, there is a genuine issue of material fact with respect to whether the failure to warn was willful or malicious.

## III.    LAW AND ANALYSIS

### A.     Standard of Review

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id*. at 255.

**B.     Louisiana Recreational Use Immunity Statutes**

The Louisiana Recreational Use Immunity Statutes limit the liability of landowners who open their property to the public for non-commercial recreational purposes. There are two main statutes that govern this immunity. The first, located at § 9:2791, provides:

> (A) An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, *sightseeing*, or boating or to give warning of any hazardous conditions, use of, *structure*, or activities on such premises to persons entering for such purposes, *whether the hazardous condition or instrumentality causing the harm is one normally encountered in the true outdoors or one created by the placement of structures or conduct of commercial activities on the premises*. If such an owner, lessee, or occupant gives permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
> (B) This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property . . . . Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit . . . .
> (C) The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and *buildings*, structures, machinery or equipment thereon.
> . . .

3

La. Rev. Stat. § 9:2791 (emphasis added). The second statute is located at § 9.2795:

> (A) As used in this Section:
> (1) "Land" means *urban or rural* land, roads, water, watercourses, private ways or *buildings*, structures, and machinery or equipment when attached to the realty.
> . . .
> (3) "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or *viewing or enjoying historical, archaeological, scenic, or scientific sites*.
> . . .
> (B)
> (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
> (a) Extend any assurance that the premises are safe for any purposes.
> (b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
> (c) Incur liability for any injury to person or property caused by any defect in the land *regardless of whether naturally occurring or man-made*.
> . . .

La. Rev. Stat. § 9:2795 (emphasis added). With respect to the relationship between the two statutes, the Supreme Court of Louisiana has stated: "Inasmuch as La. Rev. Stat. § 9:2795 was the later expression of legislative will and has been amended six times, we conclude the Legislature has impliedly expressed an intention that § 2795 be controlling as between these two statutes." *Richard v. Hall*, 874 So.2d 131, 151 (La. 2004).

Historically, § 2791 and § 2795 provided narrower immunity than they currently do. The Supreme Court of Louisiana interpreted older versions of those statutes and concluded that their

4

purpose was "to confer immunity on owners of undeveloped, nonresidential rural or semi-rural land areas." *Keelen v. State, Dept. of Culture, Recreation & Tourism*, 463 So.2d 1287, 1289 (La. 1985). This interpretation produced a three-part test to determine whether immunity applied: (1) the injury had to occur on "undeveloped, non-residential, and rural or semi-rural" land; (2) the injury had to be "the result of recreation that can be pursued in the 'true outdoors'"; and (3) the instrumentality that caused the injury had to be "of the type normally encountered in the 'true outdoors' and not 'of the type usually found in someone's backyard.'" *Fournerat v. Farm Bureau Ins. Co.*, — So. 3d —, 2012 WL 4320226, at *9 (La. Ct. App. 2012) (quoting *Keelen*, 463 So.2d at 1290). The Supreme Court of Louisiana has also provided guidance on the principles of interpreting the Recreational Use Immunity Statutes, noting that they are "in derogation of a common law right and therefore, are to be strictly interpreted." *Monteville v. Terrebonne Parish Consol. Gov't*, 567 So.2d 1097, 1100 (La. 1990).

However, subsequent amendments to these statutes have broadened their grant of immunity. The current version of the statutes includes both "urban" and "rural" lands, § 2795(A)(1), and covers defects in the land that are both "naturally occurring" and "man-made," § 2795(B)(1)(c). A 2001 amendment also added new activities to § 2795(A)(1), including nonmotorized vehicle operation, roller skating, and skate boarding. La. Acts 2001, No. 1199, § 1. Furthermore, a 2003 amendment to § 2791(A) resulted in the inclusion of hazardous conditions and harm-causing instrumentalities "normally encountered in the true outdoors" as well as those "created by the placement of structures or conduct of commercial activities on the premises." La. Acts 2003, No. 716, § 1. Thus, Louisiana courts have held on multiple occasions that the first and third prongs of the *Keelen* test no longer apply. *See, e.g.*, *Fournerat*, 2012 WL

4320226, at *10; *Lambert v. State*, 912 So.2d 426, 430 (La. Ct. App. 2005).

**C.     Analysis**

   **1.   Immunity**

Defendants' primary basis for their summary judgment motion is their contention that Oak Alley is entitled to immunity under the Recreational Use Immunity Statutes. Defendants assert, and Plaintiff does not appear to dispute, that Oak Alley does not operate the plantation as a commercial enterprise for profit; § 2795 expressly provides that the existence of an admission charge does not disqualify a non-commercial enterprise from immunity under the statute. *See* La. Rev. Stat. § 9:2795(A)(4), (B)(1). As Defendants note, it is undisputed that Oak Alley is 501(c)(3) nonprofit organization. As such, it is evident that Oak Alley is not excluded from coverage under the Recreational Use Immunity Statutes on the grounds that it is actually the owner of a commercial recreational facility.

However, Plaintiff and Defendants disagree over whether Plaintiff was injured while engaged in a recreational activity within the coverage of the statutes. Defendants cite statutory language in both § 2791 and § 2795 to argue that Plaintiff's injury, which occurred as she was walking across the veranda of Oak Alley Plantation in order to the view the alley of oak trees, is within the statutes' purview. Section 2795 includes "viewing or enjoying historical . . . sites" in its definition of "[r]ecreational purposes," La. Rev. Stat. § 9:2795(A)(3), and includes attached "buildings" and "structures" in its definition of covered "[l]and," *id.* § 9:2795(A)(1). Though not controlling in the case of a conflict, § 2791 includes "sightseeing" in its list of covered activities, *id.* § 9:2791(A), and also includes "buildings" and "structures" in its definition of covered "premises," *id.* § 9:2791(C). Defendants argue that they are entitled to immunity because

6

Plaintiff was injured while "viewing or enjoying [a] historical . . . site[]," or "sightseeing," on a "building[]" attached to the land.

Plaintiff responds by citing the original purpose of the Recreational Use Immunity Statutes, as well as the second prong of the *Keelen* test described above. As the court noted in *Keelen*, the original purpose of the immunity statutes was "to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas" in order to encourage them to make those lands available for public recreational use. 463 So.2d at 1290 (citing 1975 La. Acts, No. 615, § 1). Thus, the *Keelen* Court developed the three-prong test described above. Although Plaintiff concedes that the first and third prongs of that test have subsequently been removed, Plaintiff asserts that the second prong still applies and precludes immunity in this case. As described above, the second prong of the *Keelen* test requires that the person be injured while engaged in "recreation that can be pursued in the 'true outdoors.'" *Id.* Plaintiff argues that she was not engaged in this type of activity when injured.

Furthermore, Plaintiff argues that only some "buildings" and "structures" are included in the Recreational Use Immunity Statutes. In *Keelen*, the court noted:

> The existence of some improvements on relatively undeveloped rural or semi-rural property does not change the character of the land so as to deprive its owner of the immunity granted by the statutes. Improvements such as shelters, toilet facilities, fireplaces, etc. are merely conveniences incidental to the use of the land for enumerated recreational activities and do not of themselves take property out of a rural, undeveloped classification. This view is reinforced by the fact that the definitions of "premises" in La. Rev. Stat. § 9:2791 and of "land" in La. Rev. Stat. § 9:2795 include "buildings, structures and machinery."

463 So.2d at 1290. Plaintiff argues that the Oak Alley mansion is not included within the statutory scheme, because "the property is highly developed," and the building "is not incidental

7

to the use of the land for enumerated recreational activities."

In support of these arguments, Plaintiff notes the general lack of similar cases in which immunity was found to exist, and suggests that in the cases in which immunity has been found, the activity was of a much more "outdoor" nature. *See, e.g.*, *Richard v. Hall*, 874 So.2d 131 (La. 2004) (injury on plantation while duck hunting); *Richard v. La. Newpack Shrimp Co., Inc.*, 82 So.3d 541, 547 (La. Ct. App. 2011) (injury on levee walkway granting access to bayou for boating and camping); *Ramos v. State, ex rel. Dept. of Transp. & Dev.*, 977 So.2d 1066 (La. Ct. App. 2008) (injury on rope swing into creek); *Benoit v. City of Lake Charles*, 907 So.2d 931 (La. Ct. App. 2005) (injury in public park).

The Court understands the original purpose of the Recreational Use Immunity Statutes, but that context alone is insufficient to permit a departure from the clear and explicit statutory text cited by Defendants. Plaintiff was on Oak Alley's property for the purpose of "viewing or enjoying [a] historical site[]," or "sightseeing." She was injured while engaged in that activity, on a "building[]" attached to Oak Alley's property. As Defendants note, it is no longer completely clear whether the second prong of the *Keelen* test applies, but even if it does, viewing a historic alley of oak trees is arguably the type of activity that can be pursued only in the outdoors. Moreover, Plaintiff's arguments regarding the highly developed nature of the property speak more directly to the third (now repealed) prong of the *Keelen* test, which related to the instrumentality or condition that caused Plaintiff's injury, and are no longer wholly relevant now that this element has been removed.

For these reasons, Oak Alley is entitled to immunity under the Recreational Use Immunity Statutes in this case.

### 2. Willful or Malicious Failure to Warn

Because Defendants are covered by the Recreational Use Immunity Statutes, they are liable for Plaintiff's injuries only for "willful or malicious failure to warn against a dangerous condition, use, structure, or activity." La. Rev. Stat. § 9:2795. "[A] failure to warn of a dangerous condition connotes a conscious course of action, and is deemed willful or malicious when action is knowingly taken or not taken, which would likely cause injury, with conscious indifference to consequences thereof." *Lambert v. State*, 912 So.2d 426, 434 (La. Ct. App. 2005); *see also Robinson v. Jefferson Parish Sch. Bd.*, 9 So.3d 1035, 1046 (La. Ct. App. 2009); *DeLaFosse v. Village of Pine Prairie*, 998 So.2d 1248, 1251-52 (La. Ct. App. 2008). Defendants argue that there is no evidence of such willful or malicious conduct in this case.

In opposition, Plaintiff argues that Defendants were on notice of the dangerous condition, yet they did not act to remedy that condition. In support of this contention, Plaintiff cites Defendants' admission in written discovery that other, similar injuries have occurred on the veranda (Ex. B to Pl.'s Opp., Rec. Doc. 22-3 at 5) and attaches copies of three incident reports in which guests suffered somewhat similar injuries (Ex. C to Pl.'s Opp., Rec. Doc. 22-4 at 5-10). Thus, Plaintiff argues that there remains a genuine issue of material fact with respect to whether Oak Alley willfully or maliciously failed to warn Plaintiff because Oak Alley was aware of the danger posed by its veranda, yet did nothing—that is, Oak Alley exhibited "conscious indifference" to the consequences of its failure to act.

In response to this argument, Defendants first note that two of the three incident reports involve guests who missed the step down from the patio because they were looking up at the oak trees. Defendants then argue that the difference in height is not an "unreasonably dangerous

condition." (Defs.' Reply, Rec. Doc. 25 at 4). Furthermore, Defendants argue that Plaintiff's evidence speaks more to a general negligence standard—that Oak Alley knew, or should have known, of the danger—than to the heightened "willful or malicious" standard that applies here. Finally, Defendants note that it would be impossible for them "to post warnings and blockades at every conceivable location where there is a 'difference in height' from the surrounding ground. *Id.*

The Court first notes that under this statute, a condition does not have to be "unreasonably dangerous," as Defendants argue, but merely "dangerous," meaning "likely [to] cause injury." *Lambert*, 912 So.2d at 434. Nonetheless, Plaintiff has not shown a genuine issue of material fact with respect to whether Defendants' failure to warn of the difference in height between the veranda and the surrounding ground was "willful or malicious." The mere fact that between one and four other guests to Oak Alley out of the millions of visitors since 1976 had previously tripped in the same vicinity as the Plaintiff in this case does not render Oak Alley's failure to warn "willful or malicious," particularly given the differing circumstances and nature of the other reported injuries. This case is not like *Lambert v. State*, 912 So.2d 426, in which the dangerous condition at issue had resulted in at least 30 similar deaths over the course of 20 years, and protective measures had been discussed and taken, then allegedly abandoned. *Id.* at 435. Instead, this case resembles *Robinson v. Jefferson Parish School Board*, 9 So.3d 1035 (La. Ct. App. 2009), in which the court held that mere evidence of awareness of a dangerous condition did not suffice to prove willful or malicious failure to warn of that condition. *Id.* at 1046.

In short, it is not entirely clear that the difference in height between the veranda and the ground—apparently, a difference of several inches—is actually "dangerous," but regardless,

there is no a genuine issue of material fact with respect to whether Oak Alley willfully or maliciously failed to warn of that condition.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' motion for summary judgment (Rec. Doc. 21) is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 19th day of November, 2012.

_____
UNITED STATES DISTRICT JUDGE